UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BROOKINGS MUNICIPAL UTILITIES,<br><br>Plaintiff,<br><br>vs.<br><br>T-MOBILE US, INC., T-MOBILE USA, INC., SPRINT SPECTRUM L.P., and SPRINT COMMUNICATIONS COMPANY L.P.,<br><br>Defendants. | 4:20-CV-04113-RAL<br><br><br>ORDER DENYING MOTION TO RECONSIDER DENIAL OF TEMPORARY RESTRAINING ORDER AND TO SET BRIEFING DEADLINE AND HEARING ON PRELIMINARY INJUNCTION REQUEST |

On August 3, 2020, Plaintiff Brookings Municipal Utilities (BMU) filed a Complaint alleging breach of contract in Defendants' allegedly violating Addendum XIII to a certain Affiliation Agreement, breach of the implied covenant of good faith and fair dealing, tortious interference with business relations, breach of contract by the Sprint Defendants of the Affiliation Agreement, and for an accounting from the Sprint Defendants. Doc. 1. The prayer for relief sought injunctive relief as well as compensatory damages and other relief. Doc. 1 at 32–33. The Complaint itself was not verified.

On August 13, 2020, BMU filed a Motion for Temporary Restraining Order (TRO) and/or Preliminary Injunction. Doc. 4. Specifically, BMU requested that this Court preserve the status quo as it existed regarding BMU's business as of the merger of Sprint and T-Mobile by enjoining the Defendants from the following conduct: (a) operating any retail stores, kiosks, or other retail outlets in BMU's service area; (b) undertaking any marketing or promotion of T-Mobile products

1

and services in BMU's service area, other than the purchase of national advertising outside of the service area that may reach customers within the service area; (c) sending messages to BMU's Swiftel customers promoting T-Mobile products or services by mail or by any electronic or other means and from including such messages in monthly bills, notices or other materials sent to BMU's Swiftel customers; (d) disrupting the "My Sprint" account functionality for Swiftel customers using the Sprint website and Sprint Mobile App; (e) routing Swiftel customers to the T-Mobile website or other promotional media when those customers use the Sprint website in relation to their wireless service; (f) sending "pop-up" messages or advertisements promoting T-Mobile products or services to Swiftel customers when those customers use the Sprint Mobile App in relation to their wireless service; (g) otherwise soliciting BMU's Swiftel customers to switch to T-Mobile products or services, directly or indirectly; (h) taking any other action that would cause confusion for BMU's Swiftel customers as to the identity of their current wireless service carrier or their continuing ability to use BMU's service; and (i) taking any action that would result in diminution or abandonment of the Sprint wireless network or cause BMU's Swiftel customers not to have full access to the Sprint products, services and features that they currently receive through BMU. Doc. 4 at 3–4. BMU submitted a draft TRO covering these nine requests. Doc. 5-10. BMU's Complaint alleges that Defendants have been engaging in some of this behavior since April 2020, although some of these actions were implemented as recently as August 5, 2020.[1] Doc. 1 at ¶¶ 32–43. BMU has a significant financial interest at stake having invested more than $8 million since 2016 to upgrade its wireless network. Doc. 1 at ¶ 43.

---

[1] BMU's Memorandum discussed increasingly aggressive marketing directly to BMU's customers beginning August 6, 2020. Doc. 5 at 23–24.

BMU also requested an injunction to specifically enforce terms of the Sprint-BMU Affiliation Agreement that BMU alleges the Defendants to have breached, seeking this Court to order that: (a) upon entry of the Court's order, Sprint and T-Mobile shall "negotiate in good faith for a period of 90 days the terms of an addendum" to the Affiliation Agreement, "which would include mutually agreeable terms and conditions relating to" a merger-related "conversion" (i.e., the implementation of the merger of T-Mobile and Sprint) and allow BMU to continue its affiliate relationship with the merged entity; (b) within 30 days of the Court's order, Sprint and T-Mobile shall produce to BMU information that BMU requested from Sprint on June 9, 2020, so that, if the parties fail during the initial 90-day period after entry of the Court's order to negotiate terms for continued affiliation, they may meaningfully discuss Sprint's potential exercise of its option under the Affiliation Agreement to purchase BMU's wireless business during the subsequent 60-day period; and (c) if the parties fail during the initial 90-day period after entry of the Court's order to negotiate terms for continued affiliation *and* Sprint then declines to exercise its purchase option during the subsequent 60-day period, Sprint and T-Mobile shall "negotiate in good faith an amendment to the Affiliation Agreement and the Services Agreement containing such terms as may be necessary and reasonable acceptable" to accommodate BMU's potential purchase of the "Competing Network," as defined in the Affiliation Agreement, now operated by T-Mobile in BMU's service area. Doc. 4 at 2–3. BMU did not request this relief by entry of a TRO, but presumably through entry of a preliminary injunction.[2]

BMU filed a lengthy Memorandum, Doc. 5, in support of its request for a TRO and/or preliminary injunction together with a number of attachments ultimately numbering 188 pages in

---

[2] This Court understands BMU to be seeking that injunctive relief contained in its draft TRO to be part of any preliminary injunction.

3

length. Docs. 5, 5-1, 5-2, 5-3, 5-4, 5-5, 5-6, 5-7, 5-8, 5-9, 5-10. The attachments include an Affidavit of Steve E. Meyer, BMU's executive vice president/general manager, detailing the factual backdrop to BMU's request. Included in the material is correspondence concerning this dispute between BMU's counsel and Defendants' counsel, Doc. 5-7, as well as correspondence between BMU and Sprint/T-Mobile, Docs. 5-5, 5-6, 5-8. The materials filed, however, lacked any certification in writing of any effort made to give notice to Defendants of the TRO motion or an explanation of why notice should not be required.

Rule 65 of the Federal Rules of Civil Procedure governs preliminary injunctions and TROs. Rule 65(b)(1) concerning issuance of TROs provides:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). This Court denied BMU's motion for temporary restraining order because BMU had not satisfied Rule 65(b)(1)(B), requiring "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Doc. 7 at 4 (quoting Fed. R. Civ. P. 65(b)(1)(B)).

This Court, however, noted the significance to BMU of this case and the need for quick judicial attention to BMU's preliminary injunction request. Accordingly, this Court ordered that BMU email this Court's Order Denying Temporary Restraining Order to Defendants' counsel forthwith, together with all pleadings of record. This Court also ordered that counsel for Defendants notice appearance in this case so that this Court can coordinate for the Defendants to be heard before this Court considers entry of any possible injunctive relief.

Counsel for Defendants noticed appearances on August 14, 2020. Docs. 11, 12. Defendants now have filed a document containing a relatively brief argument and summary of the reasons why Defendants oppose BMU's request for injunctive or other relief. Docs. 16, 17. Defendants requested two weeks from August 17 to respond more formally to BMU's motion papers. Doc. 16.

On August 16, 2020, BMU filed a Motion for Reconsideration of August 14, 2020 Order Denying Temporary Restraining Order. Doc. 13. BMU in its motion provided information about its communications with Defendants' counsel, explaining that when this Court issued its August 14 order, "counsel to BMU were in the process of finalizing their Certificate of Service with respect to BMU's Motion," and did not anticipate the Court ruling on its initial motion for TRO so expeditiously as occurred. Doc. 13 at ¶¶ 6, 8. BMU also made clear that it was not seeking a TRO without first giving notice to the Defendants. Doc. 13 at ¶ 8. Defendants' filings oppose the Motion for Reconsideration. Docs. 16, 17. Defendants' most recent filing dated August 17, 2020, attached a Notice of Exercise of Option to Purchase, Doc. 17-1, which is an option contained in the Affiliation Agreement at issue.

While exercise of the option to purchase might resolve at least part of this case,[3] the conduct alleged in the Complaint and sought to be enjoined through the TRO may adversely affect BMU's business value under Section 11.6.1 of the Affiliation Agreement. Indeed, yesterday

---

[3] The Complaint contains a cause of action separately against the "Sprint Defendants" for alleged breach of contract predating the merger of Sprint and T-Mobile. Doc. 1 at ¶¶ 73–76. Moreover, if BMU's allegations are correct, Defendants' actions are eroding BMU's goodwill and customer base, and therefore might reduce what BMU receives through Defendants' exercise of the option to purchase, leaving some claim against all the Defendants even after any possible purchase of BMU's wireless business.

BMU filed a reply memorandum, Doc. 19, in support of its request for a TRO, making clear that the notice of the option to purchase does not moot the request for injunctive relief.

Requests for TROs, even those made in motions to reconsider, deserve the prompt attention of the Court because TROs are designed to address emergency situations where "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Here the Defendants to some extent have been heard in opposition through what they have filed. Doc. 16. "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." Cabrera-Asencio v. Young, 4:16-CV-04096-RAL, 2018 WL 502607, at *3 (D.S.D. Jan. 19, 2018) (quoting Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988)). BMU has presented additional facts through its motion to reconsider, but this Court finds insufficient reason to reconsider its denial of a TRO. This Court suspects that some part of the damage allegedly being caused by Defendants to BMU through any breach of contract or unfair competition might be quantifiable in money damages for diminution in business value or lost income and thus not an "irreparable injury" under Rule 65(b)(1)(A), so long as this Court can hear from the parties and rule on the requested preliminary injunctive relief promptly. That is, this Court remains unconvinced that a TRO before Defendants can be heard must be entered. However, this Court wants to hear from the parties in person at the soonest possible date as some of the injunctive relief requested may justify entry of a preliminary injunction. Therefore, it is hereby

ORDERED that BMU's Motion to Reconsider Denial of the TRO, Doc. 13, is denied. It is further

ORDERED that the Defendants have until August 26, 2020, to file a more formal response to the request for a preliminary injunction. It is further

ORDERED that the parties cooperate to set a hearing for August 28, 2020, on the request for a preliminary injunction to take place in the United States Courthouse in Sioux Falls, South Dakota, with counsel given the opportunity to appear by video link or telephonically.

DATED this 20th day of August, 2020.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE